**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____
NATIONAL LABOR RELATIONS BOARD,

                Applicant,

      v.                                       DECISION & ORDER
                                                            14-CV-6469

ACE MASONRY, INC. d/b/a ACE UNLIMITED
and BELLA MASONRY, LLC, alter egos and
HENRY BELLAVIGNA, LISA BELLAVIGNA, and
ROBERT P. BELLAVIGNA, individually,

                Respondents.
_____

## Preliminary Statement

On January 8, 2016 this Court issued an Order to Show Cause, (Docket #40), as to why respondents should not be subject to sanctions for failure to comply with the terms of this Court's September 10, 2015 Order, (Docket #39), requiring them to provide certain receipts of expenditures made in excess of $300.00. Respondents responded to the Court's Order to Show Cause on January 15, 2016, through an affirmation of counsel and attached exhibits. (Docket #41). Counsel for the National Labor Relations Board (hereinafter "NLRB") filed a reply affirmation on January 22, 2016. (Docket # 42).

## Relevant Facts

Ace Masonry, Inc. and Bella Masonry (hereinafter "Ace" and "Bella") were found to have committed unfair labor practices against their former employees in violation of Sections 8(a)(5) and (1) of the National Labor Relations Act. In this federal

action, the NLRB filed an application for a Prejudgment Writ of Garnishment and a Protective Restraining Order ("PRO") pursuant to the Federal Debt Collection Practices Act against Ace and Bella, as well as against Henry, Lisa and Robert Bellavigna, the three individual principals of Ace and Bella. Judge Larimer issued both the writ and the PRO on August 19, 2014. (Docket ## 8, 9).

Since that time the parties have been fighting over whether respondents have been complying with sections VII and VIII of the PRO, which require that they furnish to the NLRB information and documentation about their assets and expenditures. This warfare has required the Court to devote substantial time to reading various submissions, holding telephone conferences, resolving disputes and generally supervising the lawyers as they argue over whether the Bellavignas have provided adequate documentation supporting their purchase of things such as home heating oil, dental work, and dog collars. See generally Applicant's Affirmation (Docket # 42) exs. "A", "B", and "C". My efforts to resolve the lawyers' most recent conflict resulted in an extended telephone conference on September 9, 2015 and the issuance of an Order the following day, directing the respondents to provide records supporting recent expenditures in

excess of $300.00 to the NLRB lawyers.[1] (Docket # 39). The NLRB thereafter complained that respondents were not fully complying with the Court's Order. In an effort to resolve the compliance issue without protracted litigation, the Court attempted to ascertain from respondents' counsel the status of compliance with the September 10th Order, but counsel failed to respond. Thus, the Court had no choice but to issue the instant Order to Show Cause.

The respondents have now filed papers and documentation supporting their claim that they have complied as best they are able to the demands of the NLRB. Counsel for the respondents argues that his corporate clients (Ace and Bella) are either dissolved or have no assets. He asserts that Henry Bellavigna is a seventy-five-year-old man with failing mental health, living off of a fixed income, whose only asset is his residence which is encumbered by a mortgage that exceeds the home's value. Counsel describes Lisa Bellavigna as unemployed and states that her only real asset is a residence owned jointly with her husband Robert, who is employed as a project manager in a construction company. Counsel asserts that he has supplied the

---

[1] On July 6, 2015, the NLRB filed a motion seeking to hold respondents in civil contempt and other relief. (Docket #37). Instead of scheduling the motion for argument, the Court held a conference with counsel in an attempt to resolve it. The conference resulted in the Court's issuance of its September 10, 2015 Order, (Docket #39), with the understanding that failure to comply may justify the NLRB renewing their civil contempt application. Although the docket reflects that the NLRB's motion for contempt is still outstanding, the motion was resolved by the Court's September 10th Order.

3

NLRB with thousands of pages of documents detailing his clients' current financial situation, has responded to lengthy and detailed interrogatories regarding their expenditures and assets, and accuses the NLRB of engaging in a vindictive "witch hunt" in an effort "to pound Ace, Bella, Henry Bellavigna, Lisa Bellavigna and Robert Bellavigna into the ground." See Affirmation of Jason Bailey, Esq. (Docket #41).

For their part, the lawyers for the NLRB do not dispute that respondents have provided voluminous discovery but claim that it was untimely and that respondents still have not responded to a November 10, 2015 email seeking specific documents (for example, receipts for the purchase of a dryer and a lawn mower) and "clarification of some of the information provided by Respondents." See Answering Affidavit of Sara Posner, Esq. (Docket #42).

## Discussion

While thankfully it does not occur often, there comes a time in a few cases where a Court has to say to the lawyers: "enough is enough." This is one of those cases. Neither side can be particularly proud of how we ended up here. Respondents' counsel does himself and his clients no favors by filing untimely discovery responses or by ignoring requests from the Court. By the same token, counsel for the NLRB seems to relish forcing members of the Bellavignia family to obtain and produce

4

receipts that probably have little practical relevance as to whether the NLRB will be able to obtain compliance with its damage award.

I have carefully reviewed the respondents' response to the Order to Show Cause and accompanying exhibits and find that imposing sanctions for violating my September 10, 2015 Order is not justified. Albeit tardy, respondents' submission reflects a good faith effort to disclose relevant financial information to the NLRB. Nothing in the submission manifests an attempt to hide assets or secrete large sums of money, or suggests that the individual respondents are living far beyond their means. Indeed, the NLRB's counsel does not suggest otherwise. I also note that this is not the first time that NLRB counsel has unconvincingly complained that respondents have failed to provide required financial information. In late 2014 the NLRB sought to hold respondents in contempt for failure to adequately respond to the NLRB's demands for financial information. (Docket #27). In rejecting their motion for contempt, Judge Larimer found that the NLRB was in possession of "a great deal of information relating to respondents' assets and financial transactions," and had failed to demonstrate "non-compliance with the PRO, much less that respondents have not been reasonably diligent in attempting to comply with that order." See Order (Docket #31) at 3.

The record supports the same conclusion here. Respondents have provided and continue to provide substantial financial information to the NLRB, as well they should since they are under a legal obligation to do so. But given this ruling and Judge Larimer's earlier Decision and Order, counsel for the NLRB might want to consider exercising greater discretion in invoking the supervisory power of the Court, and limit their applications to situations where they truly believe that respondents are deliberately hiding financial transactions or transferring assets in order to avoid payment of damages. "The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." Am. Family Mut. Ins. Co. v. Roth, No. 05 C 3839, 2010 WL 3397362, at *2 (N.D. Ill. Aug. 25, 2010). Similarly, counsel for the respondents may want to consider whether he wants to continue to aggravate opposing counsel and the Court by making untimely submissions requiring the Court to engage in exercises such as this. In fact, all counsel are now on notice that the advice set forth herein will be taken into consideration by the Court should there be any further litigation or disputes on matters such as this in the future.

## Conclusion

Having decided that respondents are in substantial compliance with their disclosure obligations as set forth in my

6

September 10, 2015 Order, the Court determines that respondents should not be sanctioned for failing to comply with the Court's Order. The Clerk is directed to deem Docket # 37 as resolved.

**SO ORDERED.**

                                   _____
                                   JONATHAN W. FELDMAN
                                   United States Magistrate Judge

Dated:   March 21, 2016
             Rochester, New York